THE PEOPLE *ex rel.* THE FIRST NATIONAL BANK OF CHICAGO, as Trustee, *et al.*, Plaintiffs-Appellees, v. THE CITY OF NORTH CHICAGO, Defendant-Appellant.

Second District   No. 2—86—0416

Opinion filed June 30, 1987.

Richard J. Smith, of Sullivan, Smith, Hauser & Noonan, Ltd., and Ros-

ing, Applehans & Smith, Ltd., both of Waukegan, for appellant.

Clayton P. Voegtle, of Snyder, Clarke, Dalziel & Johnson, of Waukegan, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, the city of North Chicago, appeals from the judgment of the circuit court of Lake County denying its motions to strike and dismiss the plaintiff trusts' amended complaint in *quo warranto* and granting the plaintiff trusts' motion for summary judgment.

This cause comes to us for the second time. In the first appeal, we considered whether the circuit court of Lake County had erred in denying a "Petition for Leave to File Complaint in *Quo Warranto*" presented to the court by seven plaintiffs, six trusts (two of them presently plaintiffs here), and a corporation. The plaintiffs sought to have declared invalid two annexations by North Chicago, one of a strip of land which occurred in 1977 and one of a triangular piece of property in 1982. The circuit court of Lake County denied plaintiffs leave to file the complaint in *quo warranto*. By order pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23; *People ex rel. First National Bank v. City of North Chicago* (1984), 120 Ill. App. 3d 1168 (unpublished Rule 23 order)), we found the owners of two of the tracts identified as B-1 and B-2 on the sketch appended hereto should not have been denied leave to file a complaint in *quo warranto* since portions of those owners' tracts comprised the triangular parcel annexed by North Chicago. Accordingly, we reversed the judgment of the trial court as to those plaintiffs, affirmed its judgment as to the remaining plaintiffs, and remanded the cause for further proceedings.

Plaintiffs here then filed the detailed amended complaint in *quo warranto* which is at issue here. It is alleged that the strip of land which cuts across tracts B-1 and B-2 (shown on the sketch as Pulaski Drive) was condemned by Lake County in 1976 for a road right-of-way. Further, in 1977, North Chicago annexed this strip in addition to a portion of Fourteenth Street, which essentially was the extension to the east of this strip of land. As was also alleged in their initial complaint filed on February 16, 1983, plaintiffs' amended complaint alleged this 1977 annexation was not of contiguous property and was an unlawful strip annexation. It is further alleged that in February 1982, the plaintiffs filed a "Petition to Annex" their property to Waukegan, and, on June 4, 1982, Waukegan passed an ordinance annexing those tracts. An error was discovered in the legal description in the ordinance, and, on October 18, 1982, Waukegan enacted an amended ordi-

nance to correct the error. Prior to that amendment, however, on July 30, 1982, North Chicago instituted a *quo warranto* proceeding to challenge the annexation by Waukegan which was alleged to be "still pending" in the circuit court of Lake County under general number 82-MR-210.

We note here that a judgment of ouster was entered against Waukegan by the circuit court of Lake County upon North Chicago's complaint in *quo warranto* concerning that annexation. North Chicago's complaint alleged generally that the annexation of the approximately 600-acre area by Waukegan unlawfully included portions of the city of North Chicago. Prior to the hearing on the merits, however, the error in the legal description in the annexation ordinance was discovered which created an 82-foot gap between Waukegan and the area to be annexed. North Chicago objected to Waukegan's attempted amendment to the legal description, and its motion for judgment on the pleadings was granted on the ground that the subject property was not contiguous to Waukegan.

On appeal, this court in an opinion filed July 5, 1983 (*People ex rel. City of North Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d 88), reversed and remanded, finding it was error to refuse to permit Waukegan to amend the legal description and that the trial court should have considered the legal description as correctly set forth in the petition for annexation, rather than as shown erroneously in the annexation ordinance. This court held that North Chicago had standing to bring the *quo warranto* action and remanded the cause for further proceedings. Consequently, the validity of Waukegan's annexation of the property was still at issue at the time plaintiffs here filed their amended complaint.

It is further alleged herein that on August 27, 1982, North Chicago gave notice that it would annex a triangular parcel of property consisting of 32.6 acres encompassing portions of the two tracts owned by the plaintiffs and that North Chicago passed its ordinance annexing the triangular parcel on September 7, 1982. It is alleged that this annexation was illegal because the triangular parcel was not wholly bounded by one or more municipalities and that it purported to annex some of the same property already annexed by Waukegan which was then at issue in the *quo warranto* action filed by North Chicago.

The amended complaint details the injuries caused by these unlawful annexations to the plaintiffs as owners of a portion of the total 600-acre tract which was the subject of the petition for annexation to Waukegan. Plaintiffs prayed that the court direct North Chicago to

show by what warrant it purported to have annexed the property in question and, if no warrant was found, that the court declare the annexations void and enter an order ousting North Chicago.

Thereafter, North Chicago filed a motion to dismiss on the basis the amended complaint "repeats many of the errors which were specifically rejected by the affirmants [*sic*] of the trial court in the appellate court decision [our order pursuant to Supreme Court Rule 23 (*People ex rel. First National Bank v. City of North Chicago* (1984), 120 Ill. App. 3d 1168)]." Plaintiffs responded that since North Chicago's motion did not go to the merits of the complaint or their right to bring the action, it properly should be regarded as a motion to strike portions of the complaint as opposed to a motion to dismiss and, for the reasons set forth in their response, should be denied.

The court heard argument on the motion to dismiss and several days later denied it. On that same date, November 11, 1984, the judge reassigned the matter to another judge, who, in turn, assigned it to the judge who heard the remainder of the cause and who also was then hearing North Chicago's *quo warranto* challenge to Waukegan's annexation of the entire 600-acre tract.

Plaintiffs herein filed a motion for summary judgment on November 30 alleging, *inter alia*, that North Chicago's 1977 annexation of the strip of land was, in fact, the annexation of a roadway strip which only met perpendicularly with the boundary of North Chicago and was, therefore, void as a matter of law. A certified copy of the ordinance annexing this roadway strip was filed with the amended complaint. Attached to the motion for summary judgment was a certified copy of a judgment order entered November 24, 1976, in the eminent domain proceeding by Lake County to obtain title to the land for the construction of a roadway (County Highway 78 a/k/a Pulaski Drive). The land described therein was alleged to be the same as the land described in North Chicago's assertedly void roadway strip annexation save for two exceptions detailed in plaintiff's motion. It was alleged that the subsequent annexation by North Chicago of the triangular parcel on September 7, 1982, pursuant to section 7—1—13 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 7—1—13) was void since, as a matter of law, a strip annexation of a roadway cannot be used to support the annexation of other territory not able to be annexed except by virtue of such strip annexation. It was further alleged the annexation of the triangular parcel also was void for the reason that the same territory was included within the territory already annexed by Waukegan on June 4, 1982, which annexation was challenged by North Chicago in a *quo warranto* proceeding filed by it on July 30,

1982, and which was still then pending. It was alleged that, as a matter of law, it is improper for one municipality to annex territory while a proceeding is pending for the annexation of the same territory.

Thereafter, on December 7, 1984, North Chicago filed a motion for reconsideration of the denial of its motion to strike or dismiss in view of the reassignment of judges. It also filed a "Motion Pursuant to Section 2—619" (Ill. Rev. Stat. 1985, ch. 110, par. 2—619) alleging that the plaintiffs' attack on its 1977 annexation of the roadway strip was barred by the relevant statute of limitations (Ill. Rev. Stat. 1983, ch. 24, par. 7—1—46) since no challenge to the annexation had been made within the one-year time period and, further, that the one exception to the statute was not applicable because the territory annexed in 1977 had since become contiguous by virtue of the subsequent annexation of the triangular parcel.

Plaintiffs responded to North Chicago's motions, and the court agreed to reconsider the motion to dismiss. It set North Chicago's additional "Motion to Dismiss Pursuant to Section 2—619" and the plaintiffs' motion for summary judgment for hearing. After hearing, the motions to dismiss were taken under advisement, and North Chicago was granted time to respond to the plaintiffs' motion for summary judgment.

North Chicago later objected to this procedure, arguing it was improper for the court to consider a motion to dismiss and a motion for summary judgment at the same time, and it asked the court to vacate that portion of its order. North Chicago also supplemented its "Motion to Dismiss Pursuant to Section 2—619," pointing out that the plaintiffs' motion for summary judgment made it clear that the plaintiffs are not owners of the roadway strip annexed by North Chicago in 1977; rather, the strip had been condemned in 1976 by Lake County. Consequently, North Chicago alleged that the plaintiffs, as nonowners of the property annexed in 1977, had no standing to bring a *quo warranto* action.

Plaintiffs filed their response to the motions, and the court denied North Chicago's motion to vacate its order. It allowed the supplement to North Chicago's motion to dismiss and took it and the plaintiffs' response under advisement. North Chicago then filed its response to the plaintiffs' motion for summary judgment, disputing the allegation that the property annexed in 1977 was a road. It attached a plat of survey for the road alleging that the May 1978 certification date thereon showed the dedication of the property as a highway did not occur until six months after it was annexed. It also disputed the allegations that the 1977 annexation involved a strip of land which only

met perpendicularly with the boundaries of North Chicago. It alleged that the legal description and the map established that more than 1,000 feet of the property annexed physically touched the northern boundary of the city of North Chicago as that boundary then existed. North Chicago also alleged that it could not file its answer to the complaint in *quo warranto* until the court ruled on the motions to dismiss.

Plaintiffs replied to North Chicago's response to the motion for summary judgment, pointing out that the roadway strip annexation was comprised of two separate parcels. The one to the east of Route 41 is the one North Chicago alleges has 1,000 feet of contiguity with its boundary, but the one to the west of Route 41 is contiguous with North Chicago only for the width of the roadway at the point where it touches North Chicago perpendicularly and then extends northwesterly some 3,562 feet away from the city.

The court did not rule on the outstanding motions until April 30, 1986. Although North Chicago provides record references to it, and the court ordered it to be incorporated with its order, no report of proceedings of the court's oral decision has been filed with the record. Its written order found North Chicago's 1977 annexation was void as an annexation of a roadway and a strip. It found no genuine issue of material fact, denied both of North Chicago's motions to dismiss, entered summary judgment in favor of the plaintiffs, and ousted North Chicago from asserting its jurisdiction over any of the realty which was the subject of the action. This appeal followed.

At the outset, we address the plaintiffs' motion to dismiss the appeal which was taken with the case. A previous motion of theirs to dismiss the appeal which was filed prior to the filing of briefs herein was denied. That motion alleged that on June 16, 1986, the city of Waukegan annexed all of the property which was the subject of this litigation (tracts B-1 and B-2) together with additional property (tracts B, C-1, C-2, D, D-1) and Pulaski Drive from the western border of Route 41 to its junction with Route 43. At the time of the annexation, no stay order had been entered by, or applied for in, the trial court staying the enforcement of the judgment in this cause during the pendency of the appeal. A motion for stay filed by North Chicago in this court concurrently with the plaintiffs' first motion to dismiss was denied. Accordingly, the plaintiffs assert that because the annexation took place more than 30 days after the judgment of the trial court and at a time when no stay of judgment had been applied for or obtained, the annexation by Waukegan cannot be affected by a reversal in this action and, thus, the appeal has been rendered moot by virtue of the provision of the Supreme Court Rule 305(i) (87 Ill. 2d R. 305(i)).

In their second motion to dismiss which was taken with the case, the plaintiffs additionally allege that a sale of tracts D and D-1 has occurred and that title has been transferred to the La Salle National Bank as trustee under trust agreement dated January 1, 1982, and known as trust No. 104600. It is alleged that the interest acquired by that trustee "includes the fact that the property is annexed to the city of Waukegan and zoned within the city of Waukegan." A reversal, it is posited, would disconnect the new owners from the city of Waukegan and, thus, would affect the interest which this nonparty has acquired during the pendency of this appeal. The motion also alleged that La Salle National Bank additionally is the grantee of two easements, a permanent 10-foot wide easement and a temporary construction easement 50 feet wide, for the purpose of obtaining water from the city of Waukegan and construction of a water line down to an area adjoining the purchased real estate. It is alleged that neither said trust nor the city of Waukegan is a party to the instant litigation. Accordingly, they assert, any relief granted by this court would abrogate the protection afforded by Supreme Court Rule 305(i) as to nonparties acquiring an interest when no stay has been perfected, and, for these reasons, the plaintiffs again assert the appeal has been rendered moot.

North Chicago objects to the motion to dismiss the appeal, noting that the owners of tracts D and D-1 and the prospective purchaser of those tracts were found in our previous order entered pursuant to Supreme Court Rule 23 (*People ex rel. First National Bank v. City of North Chicago* (1984), 120 Ill. App. 3d 1168) not to have sufficient interest to bring a *quo warranto* suit contesting the 1977 Pulaski Drive and 1982 triangular parcel annexations because parcels D and D-1 were not part of the area annexed. North Chicago further notes that it appears the easements as described are not located upon or involved in the property annexed by it in 1977 and 1982, nor do the plaintiffs so claim. North Chicago asserts that the issue in this cause is the validity of annexations, not ownership, and that the trial court made no declaration concerning "right, title and interest" to the property as that term is used in Supreme Court Rule 305(i) (87 Ill. 2d R 305(i)).

■ In further argument in their brief on appeal, the plaintiffs assert that Supreme Court Rule 305(i) does not speak exclusively of title; rather, it uses the words "right, title or interest." They conclude that the city of Waukegan has obtained a "right" of jurisdiction as to the property by its annexation thereof and that the purchaser has obtained an "interest" in the connection to the city of Waukegan, its zoning, and the services which can be provided by Waukegan.

Pursuant to the provisions of Supreme Court Rule 305(i), it has

been well established that in the absence of a stay, an appeal is moot if possession or ownership of a specific property which is the relief being sought on appeal has been conveyed to third parties. (*Illinois Housing Development Authority v. La Salle National Bank* (1985), 139 Ill. App. 3d 985, 987; *Arnold v. Leahy Home Building Co.* (1981), 95 Ill. App. 3d 501; *Jones v. Matthis* (1980), 89 Ill. App. 3d 929; *Horvath v. Loesch* (1980), 87 Ill. App. 3d 615; *Schwind v. Mattson* (1974), 17 Ill. App. 3d 182.) The record must unequivocally disclose that the third-party purchaser was not a party or a nominee of a party to the litigation. *Glen Ellyn Savings & Loan Association v. State Bank* (1978), 65 Ill. App. 3d 916.

Supreme Court Rule 305(i) is the same in substance as the second paragraph of former section 76(1) of the Civil Practice Act. (Ill. Ann. Stat., ch. 110A, par. 305, Historical and Practice Notes, at 211-13 (Smith-Hurd 1985).) In construing that former section, the court in *Goldblatt v. City of Chicago* (1961), 30 Ill. App. 2d 211, observed that it was to be construed with reference to section 35a of the Judgments Act (formerly Ill. Rev. Stat. 1981, ch. 77, par. 35a, presently codified as section 12—149 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 12—149)). The court rejected the argument of the plaintiff there that he had acquired a vested "right" of noncompliance with certain safety ordinances since his predecessor in title had obtained a declaratory judgment which held the ordinances in question invalid. Plaintiff, not a party to the declaratory judgment action, argued his right of noncompliance was unaffected by the subsequent reversal of the judgment since he purchased the property before an appeal had been filed or supersedeas obtained. The court agreed with the defendant city of Chicago's argument there that the term "right" in the phrase "right, title or interest" in section 76(1) of the Civil Practice Act was merely an ingredient of the broader term "title." Referring to the identical language in section 35a of the Judgments Act, the court wrote:

> "The expression used in this provision is 'right, title and interest.' It is clear that this term refers only to 'title.' The use of 'or' and 'and' is so frequently inaccurate in statutory enactments that the courts readily change 'or' to 'and' and vice versa, whenever such conversion is required by the context. 50 Amer. Juris., Statutory Construction, section 282, pp. 267-8. Boyles v. McMurphy, 55 Ill. 236, 239. Since these provisions are to be construed together there is an additional reason for supposing that the legislature intended that the somewhat analogous expression 'right, title or interest' should be interpreted to

mean 'title.'

Counsel for plaintiff has cited no cases where the term was construed disjunctively and we know of none. In the absence of clear evidence of the legislative intent to the contrary, we must assume that the provision of section 76(1) was designed to protect the transfer of 'title' to third persons, not a party to the action." *Goldblatt v. City of Chicago* (1961), 30 Ill. App. 2d 211, 217.

■ It is clear here that there has been no transfer of title to the property which is the subject of the present appeal (parcels B-1 and B-2), nor have the asserted "non-parties," the city of Waukegan and the purchasers of parcels D and D-1, sought leave to intervene in this cause for the purpose here argued by the plaintiffs. We further note Waukegan's annexation of the 600-acre tract was precipitated by the petition of plaintiffs here along with owners of the other tracts involved. As North Chicago asserts, the instant cause involves annexations, not ownership; it has been held that title to land cannot be litigated in *quo warranto* proceedings. (*Gulf Lines Connecting R.R. v. Golconda Northern Ry.* (1919), 290 Ill. 384.) Accordingly, the motion to dismiss the appeal as moot is denied.

■■ We consider first North Chicago's contention that it was error for the court to consider simultaneously motions to dismiss and plaintiffs' motion for summary judgment. In support of its contention that this was error, it cites *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, and *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638. Those cases are inapposite, however, since in each of those cases the motion to dismiss and the motion for summary judgment were combined motions made by the same party.

In *Janes*, one motion seeking both types of relief was filed by each of three defendants in that case, and, in *Premier*, the defendant asked the court to treat its motion to dismiss also as its motion for summary judgment. Here plaintiffs properly filed a motion for summary judgment pursuant to section 2—1005 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005) after the judge who first heard the cause denied North Chicago's initial motion to dismiss. That initial motion to dismiss was not specifically brought pursuant to either section 2—615 or 2—619 of the Civil Practice Law, and North Chicago's arguments here relate only to its subsequently filed "Motion to Dismiss Pursuant to Section 2—619." (Ill. Rev. Stat. 1985, ch. 110, pars. 2—615, 2—619.) A section 2—619 motion to dismiss does not address the sufficiency of the complaint.

Although North Chicago suggests that the court's procedure caused it prejudice in filing its answer and affirmative defense, we perceive no prejudice. North Chicago properly raised the statute of limitations and the matter of the plaintiffs' standing to challenge the 1977 annexation in support of its motion for involuntary dismissal of plaintiffs' complaint. (Ill. Rev. Stat. 1985, ch. 110, pars. 2—619(a)(5), (a)(9).) Although it asserts the affirmative defense of *laches* must be pleaded as a portion of its answer, it has been held that the defense of *laches* may be considered on a motion to dismiss a complaint if its applicability appears from the face of the complaint or by affidavit submitted with the motion. *Dixon v. Cahill* (1973), 10 Ill. App. 3d 779.

Further, North Chicago had the opportunity to, and did, respond to the plaintiffs' motion for summary judgment, plaintiffs replied, and neither party sought any further hearing. Accordingly, we find no error in the court's procedure.

North Chicago next argues the plaintiffs do not have standing to challenge its 1977 annexation of Pulaski Drive. It points out that additional material presented along with plaintiffs' amended complaint made it clear that the plaintiffs did not own the strip of property at the time their complaint in *quo warranto* was filed, nor did they own it at the time it was annexed; rather, Lake County owned it. Moreover, it asserts it appeared that only one of the plaintiffs may have owned the property at the time it was condemned by Lake County. North Chicago argues the plaintiffs' amended complaint fails to allege that the annexation caused harm or injury to any personal or private interest of theirs at the time the annexation took place in 1977. It notes that it was not until February 1982 that the plaintiffs entered into the alleged "contract together with others to sell approximately 136 acres of land [parcels D and D-1]" and made their decision to petition for annexation to Waukegan. Further, North Chicago asserts it was five years before the plaintiffs took any steps to challenge the 1977 annexation, and, even when they did, it was a year after their alleged private contractual interest in the property had arisen. North Chicago concludes plaintiffs do not have standing and should not be permitted to attack its 1977 annexation.

Plaintiffs argue the issue of their standing was determined in this court's prior order pursuant to Supreme Court Rule 23, and the only requisite is that they have "a sufficient private interest." They dispute the implication in North Chicago's argument that they must be the owners of the roadway in order to challenge the 1977 annexation and cite *People ex rel. Coojar Realty Corp. v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 203, a case in which they assert the court "had

no trouble with the owners of the annexed real estate also challenging the annexation of part of Route 66."

*Coojar Realty* involved three annexations. First, Burr Ridge annexed a portion of Route 66 which adjoined the village at a point 300 feet wide, but which then extended approximately one-half mile beyond the village boundaries. Five years later, the village annexed other properties connected to the village only by the extended Route 66 roadway strip. After this second annexation, the parcel owned by Coojar Realty became surrounded. The village then annexed Coojar Realty's parcel, and it filed its complaint in *quo warranto*. The court found Coojar Realty was not barred by *laches* in contesting the roadway strip annexation five years earlier. It found the series of annexations void since they were dependent upon validity of the annexation of the roadway strip which the court found to be invalid.

North Chicago distinguishes *Coojar Realty* on the basis the annexation of Route 66 was invalidated and a judgment of ouster entered upon the intervention of the State's Attorney of Du Page County for the State of Illinois "as an additional relator praying for an order of ouster as to a portion of U.S. Route 66 (now I-55)." North Chicago reasserts its contention that because plaintiffs were not the owners of the roadway in 1977, they have no standing to challenge its annexation.

■ It is very clear that *quo warranto* is the only means of challenging the annexation of territory by a municipality. (*Island Lake Water Co. v. La Salle Development Corp.* (1986), 143 Ill. App. 3d 310; *People ex rel. Gordon v. City of Naperville* (1975), 30 Ill. App. 3d 521.) Before an annexation may be attacked by an individual, there must be a "special interest." (*Schallau v. City of Northlake* (1979), 82 Ill. App. 3d 456.) The interest must be of such a nature that the usurpation of a public franchise or office has trespassed upon or injured the private, legal, or equitable rights of the individual as opposed to an injury to the general public. (*People ex rel. J. H. Anderson Monument Co. v. Rosehill Cemetery Co.* (1954), 3 Ill. 2d 592.) The private interest allegedly invaded "must be directly, substantially and adversely affected by the actions sought to be challenged in the *quo warranto* proceeding." *People ex rel. Turner v. Lewis* (1982), 104 Ill. App. 3d 75, 77; *People ex. rel. Durst v. Village of Germantown Hills* (1977), 51 Ill. App. 3d 969.

Plaintiffs here were found to have standing in our previous order pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23), but we made no specific pronouncement concerning their standing to challenge the 1977 annexation. (*People ex rel. First National Bank v. City of North*

*Chicago* (1984), 120 Ill. App. 3d 1168 (unpublished Rule 23 order).) We do so now.

■ We find no merit in North Chicago's contention that because plaintiffs were not owners of the roadway they do not have standing to challenge the 1977 annexation. It has been held that bare allegations of status as a nearby resident of the property annexed are insufficient to invoke the court's discretion to grant leave to initiate a complaint in *quo warranto*. (*People ex rel. Hanrahan v. Village of Wheeling* (1976), 42 Ill. App. 3d 825; *People ex rel. Vanderhyden v. Village of Elwood* (1972), 5 Ill. App. 3d 590.) Plaintiffs' allegations here, however, establish much more than mere status as a nearby resident and show that they have a personal, private interest in having their property annexed by Waukegan rather than North Chicago. We further find no merit in North Chicago's contention that the private interest allegedly damaged must have been existent at the time of the annexation in 1977; the requirement that the damage to the private interest "must be then occurring or certain to occur" (*People ex rel. Durst v. Village of Germantown Hills* (1977), 51 Ill. App. 3d 969, 971) is a condition precedent to the filing of a complaint in *quo warranto* and relates to the time of filing. A "petitioner cannot rely on an expected damage to his private interests." (51 Ill. App. 3d 969, 971.) Clearly, the damage to plaintiffs here was "then occurring" at the time they petitioned for leave to file their complaint in *quo warranto*.

■ Although *People ex rel. Coojar Realty Corp. v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 203, is distinguishable on the basis the State of Illinois intervened there, Coojar Realty's petition alleged the illegality of not only the annexation of its own property, but of the 1961 annexation of the portion of Route 66 as well. The court found the validity of the annexation of Coojar Realty's property was dependent upon the validity of the prior Route 66 annexation and that it filed its petition within 36 days of the purported annexation of its property. Here, North Chicago purported to annex the plaintiffs' property in September 1982, and plaintiffs petitioned for leave to file their complaint five months later, in February 1983. We do not find this delay significant in view of the alleged prior annexation of the plaintiffs' and others' property by Waukegan in June 1982. The validity of that annexation allegedly was at issue in North Chicago's *quo warranto* action against Waukegan when North Chicago annexed plaintiff's property. Moreover, we note that Waukegan's answer to North Chicago's complaint in that cause raised as an affirmative defense the improper prior annexation of certain roads by North Chicago. (*People ex rel. City of North Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d

88, 90.) Accordingly, we conclude the plaintiffs had proper standing to challenge the 1977 annexation.

Next, we consider North Chicago's contention that the limitation set forth in section 7—1—46 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—46) barred the plaintiffs from contesting the 1977 annexation. That section provides:

> "Neither the People of the State of Illinois nor any person, firm or corporation, public or private, nor any association of persons shall commence an action contesting either directly or indirectly the annexation of any territory to a municipality unless initiated within one year after the date such annexation becomes final or within one year of the effective date of this amendatory Act of 1965 whichever date occurs latest. This amendatory Act of 1965 shall apply to annexations made prior to the effective date of the Act as well as those made on or after the effective date. Where a limitation of a shorter period is prescribed by statute such shorter limitation applies. The limitation set forth in this section shall apply to any annexation, even where the judge, body or officer annexing the territory did not at the time of such annexation have jurisdiction of the subject matter, and irrespective of whether such annexation may otherwise be defective or void, *except that the limitation of this Section shall not apply to annexations of territory which was not contiguous at the time of annexation and is not contiguous at the time an action is brought to contest such annexation.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 24, par. 7—1—46.

We agree with North Chicago's contention that the amendment of this section in 1981 caused a substantial change in the application of the limitation. Prior to the amendment, an annexation ordinance could be invalidated at any time if the property was not contiguous to the municipality at the time the annexation ordinance was adopted. (Ill. Rev. Stat. 1979, ch. 24, par. 7—1—46.) Under this section as it now reads, two conditions must exist before an action challenging an annexation lawfully may be brought after one year's time, to wit: when the annexed territory (1) *was not* contiguous at the time of the annexation and (2) *is not* contiguous at the time the action challenging it is brought. North Chicago argues the legislature thus sought to create only one situation in which a municipality could suffer loss of the territory and that the purpose of the present statute is to reduce uncertainty and establish finality for annexations. The 1981 amendment permits a municipality to avoid a declaration of invalidity by curing lack of contiguity, and, thus, North Chicago asserts, "the

trial court should have determined if the territory annexed in 1977 was now physically touching North Chicago in a sufficient manner" by virtue of its subsequent 1982 annexation of plaintiffs' property.

█ The statute of limitations cannot be raised by a motion to dismiss unless it affirmatively appears from the complaint that the action is barred. (*Cundiff v. Unsicker* (1983), 118 Ill. App. 3d 268.) When a defendant raises the statute of limitations in a motion to dismiss, it becomes incumbent upon the plaintiff to set forth facts sufficient to avoid the statute. (*Cuerton v. American Hospital Supply Corp.* (1985), 136 Ill. App. 3d 231; *Sommer v. United Savings Life Insurance Co.* (1984), 128 Ill. App. 3d 808.) In reaching its decision on a motion to dismiss for untimely filing, the trial court looks to the pleadings, affidavits, and other proofs presented by the parties. *Cundiff v. Unsicker* (1983), 118 Ill. App. 3d 268; *Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139.

█ Plaintiffs' amended complaint alleged the 1982 annexation was defective not only because the 1977 annexation was improper, but because the 1982 annexation was made after the plaintiffs' and others' property had been annexed by the city of Waukegan and at a time when North Chicago's own *quo warranto* action against Waukegan was still pending. North Chicago's argument that the court should have determined if the lack of contiguity of the 1977 annexation had been cured makes it clear the court did not err in denying its "Motion to Dismiss Pursuant to Section 2—619." As we discuss later in this opinion, the court was able to determine as a matter of law that the noncontiguity of the 1977 annexation was not cured by North Chicago's subsequent 1982 annexation of the plaintiffs' property.

Plaintiffs point to *People ex rel. Village of Hazel Crest v. Village of Homewood* (1985), 132 Ill. App. 3d 632, a case in which the court declined to apply the one-year statute of limitations in order to bar Homewood's challenge to the validity of a 1958 annexation made by Hazel Crest. In that case, Hazel Crest brought the *quo warranto* action to challenge Homewood's 1980 annexation of a 125-acre parcel commonly known as the Calumet Country Club. Homewood's motion for summary judgment was granted, and Hazel Crest appealed contending, *inter alia*, that Homewood should have been barred by the applicable statute of limitations (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—46) from challenging the validity of Hazel Crest's 1958 annexation of a portion of 175th Street, an annexation which, if valid, would have rendered Homewood's subsequent annexation of the subject property invalid as an annexation of noncontiguous land. A substantial portion of 175th Street as annexed in 1958 did not border on Hazel Crest, and

the annexation of 175th Street at that point of noncontiguity had the effect of cutting off Homewood's contiguity with the southern boundary of the subject property. As noted, the court declined to find that Homewood was barred from challenging the validity of the 1958 annexation of 175th Street by Hazel Crest since "[t]he central issue in this cause is precisely whether the pertinent part of 175th Street was contiguous to Hazel Crest at the time of the 1958 annexation, and therefore the one-year limitation is not applicable." *People ex rel. Village of Hazel Crest v. Village of Homewood* (1985), 132 Ill. App. 3d 632, 636.

We note, and plaintiffs readily admit, that Hazel Crest is distinguishable since the 1958 roadway annexation there was not followed by an annexation of the thusly surrounded property, as was the case here. North Chicago argues that the trial court here should have determined whether the 1977 annexation was contiguous to the city of North Chicago *prior* to the time the plaintiffs filed their complaint in *quo warranto*, and, if the trial court determined that contiguity existed at that time, it should have refused to consider any questions concerning the validity of the 1977 annexation. We cannot accept this argument.

■■■ The burden of establishing the statute of limitations defense is on the party asserting the defense (*Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610), and the party seeking to avoid application or operation of the limitation period has the burden of proving facts which will establish his contention (*People ex rel. Adams v. Mitchell* (1980), 89 Ill. App. 3d 1023). The 1977 and 1982 annexations are inextricably linked. The validity of North Chicago's annexation of the plaintiffs' property in 1982 purported to be by authority of section 7—1—13 of the Illinois Municipal Code, which, *inter alia*, requires that the property annexed be both wholly surrounded by one or more municipalities *and* unincorporated. (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13.) North Chicago relied on its 1977 annexation in order to satisfy the condition that the property be "surrounded." In *In re Annexation to the City of Prospect Heights* (1982), 111 Ill. App. 3d 541, 543, the court noted that Illinois cases have held an ordinance is subject to direct or collateral attack whenever its authority is invoked in a judicial proceeding. Plaintiffs here have brought a *timely challenge* to the 1982 annexation, alleging that not only was the surrounding of their property improper, but that it was already annexed to Waukegan and, thus, was not unincorporated. Consequently, the validity of the "cure" was directly at issue. If the cure fails, the exception is defeated, and the 1977 annexation lies

exposed, vulnerable to attack. As noted above and later discussed herein, we believe the court was able to determine as a matter of law that the "cure" was ineffectual.

We do not believe this result does violence to the underlying purpose of the limitation set forth in section 7—1—46 under the particular facts of this case. (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—46.) Just as North Chicago argues that the plaintiffs took no steps to challenge the 1977 annexation until their interest arose in 1982, it similarly appears North Chicago took no steps to make its 1977 property annexation contiguous with itself until Waukegan annexed the sizeable parcel comprised of plaintiffs' and others' property.

Accordingly, we conclude the court did not err in denying North Chicago's motions to dismiss.

■■■ We next consider whether the court erred in granting Waukegan's motion for summary judgment. "Summary judgment is properly granted only where there is no genuine issue of material fact [citations], and this is to be determined from the pleadings, depositions, affidavits, and admissions on file in each case [citations]." (*Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 636.) Although the use of the summary judgment procedure in a proper case is to be encouraged (*Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813), it is a remedy to be awarded with caution in view of its drastic nature (*In re Estate of Tomaso* (1980), 82 Ill. App. 3d 286). A party moving for summary judgment must affirmatively show that his right thereto is clear, free from doubt, and determinable solely as a matter of law. (*Plastics & Equipment Sales Co. v. DeSoto, Inc.* (1980), 91 Ill. App. 3d 1011.) In considering whether genuine issues of fact are present, the evidence must be construed strictly against the moving party (*Miller v. Clark Wood Construction Co.* (1986), 151 Ill. App. 3d 723), and inferences which may be reasonably drawn from the evidence are resolved in favor of the party opposing the motion for summary judgment (*Frazier v. Smith & Wesson* (1986), 140 Ill. App. 3d 963; *McCarthy v. Johnson* (1983), 122 Ill. App. 3d 104).

■■■ A motion for summary judgment need not be verified; Supreme Court Rule 191(a) (87 Ill. 2d R. 191(a)) only requires that an affidavit in support of or in opposition to a motion for summary judgment be based on the personal knowledge of the affiant. (*Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632.) Summary judgment may be granted with or without supporting affidavits if there remain no genuine issues as to material facts. (*Cato v. Thompson* (1980), 83 Ill. App. 3d 321.) In determining whether summary judgment is appropriate, the court is to consider only evidentiary facts (*Carruthers*

*v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376) and not conclusions of law (*Zannis v. Lake Shore Radiologists, Ltd.* (1982), 104 Ill. App. 3d 484). It is not proper to consider in support of or in opposition to a motion for summary judgment evidentiary matters that would be inadmissible upon a trial of the issue. (*Hendricks v. Deterts* (1973), 13 Ill. App. 3d 976.) Facts unrelated to the essential elements of the plaintiffs' cause of action are not material, and, regardless of how sharply controverted, their presence in the record will not warrant denial of the motion for summary judgment. *Amalgamated Trust & Savings Bank v. Silha* (1984), 121 Ill. App. 3d 1033; *Fuller v. Justice* (1983), 117 Ill. App. 3d 933.

The sole function of the court reviewing the trial court's entry of summary judgment is to determine whether the lower court correctly ruled that no genuine issue of material fact had been raised and, if none was raised, whether judgment was correctly entered as a matter of law. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933; *Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17.) If a genuine issue of material fact exists, a motion for summary judgment may not be granted. *Fuller v. Justice* (1983), 117 Ill. App. 3d 933.

■■ ■ As plaintiffs note, the only question to be determined in a *quo warranto* proceeding is the legality of the action. (*People ex rel. White v. Underwood* (1953), 1 Ill. 2d 620.) There can be no justification for annexation absent statutory authority, and one requisite for a valid annexation is that territory sought to be annexed is contiguous to the annexing municipality. (*People ex rel. City of North Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d 88; *People ex rel. County of St. Clair v. City of Belleville* (1981), 84 Ill. 2d 1.) Where there is no statutory authority, an ordinance purporting to annex territory is a nullity. (*People ex rel. Universal Oil Products Co. v. Village of Lyons* (1948), 400 Ill. 82.) Thus, plaintiffs assert, the only material issue is whether or not North Chicago complied with the statutes for annexation and that is determinable as a matter of law.

Although North Chicago's brief purports to set forth 12 "genuine issues of material fact," it does not specifically argue how these issues are material, and most are obviously not material. One of the material issues identified by North Chicago, however, is crucial to the plaintiffs' cause of action and that is whether the 1977 annexation was "contiguous" to North Chicago at the time the plaintiffs brought the action in *quo warranto*. In order to make that determination, we believe the court correctly determined as a matter of law that North Chicago's 1982 annexation of the plaintiff's property was invalid and, conse-

quently, it could also determine as a matter of law that North Chicago's 1977 annexation of Pulaski Drive was void *ab initio*.

Plaintiffs' amended complaint alleged that the 1982 annexation of their property was invalid for two reasons: first, because North Chicago's 1977 annexation was an invalid roadway strip annexation and, therefore, the requirements of section 7—1—13 of the Illinois Municipal Code were not met since plaintiffs' property was not "wholly bounded by one or more municipalities" (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—13(a)); and second, because plaintiffs' property had already been annexed by Waukegan and North Chicago's challenge to that annexation was pending in the circuit court at the time the complaint was filed. Plaintiffs' motion for summary judgment made similar allegations and, as to the 1982 annexation, alleged "it is improper for one municipality to annex property which is the subject of a quo warranto proceeding and in which they are a party while such court proceeding is pending." Plaintiffs asked the court to take judicial notice "of the fact that the same territory is included in the pending action entitled *'People ex rel. The City of North Chicago v. The City of Waukegan'* filed in the Circuit Court of Lake County under General No. 82MR210."

North Chicago's response to this portion of plaintiffs' motion is that it "cannot respond adequately to the portions of the motion for summary judgment which mentioned the 1982 annexation for the reason that [it] has not prepared and filed an answer to the complaint and cannot do so until the court rules on the motions to dismiss."

In *People v. Davis* (1976), 65 Ill. 2d 157, 165, the court found that judicial notice may be taken of factual evidence where the facts are capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy. Moreover, judicial notice of other proceedings may be proper where the same parties are involved and the allegations from those proceedings have been proved. (*Walsh v. Union Oil Co.* (1972), 53 Ill. 2d 295.) "However, where the facts are derived from pleadings in a case not involving the same parties and are not proved, judicial notice is improper." *Vulcan Materials Co. v. Bee Construction* (1983), 96 Ill. 2d 159, 166.

■ The preamble to the court's findings in this cause recites that it took judicial notice of "the proceedings in 82MR210." Although this cause did not involve the same parties as those proceedings, we nevertheless find it was proper for the court to notice that the property annexed by Waukegan included plaintiffs' property here. By the time the court decided the plaintiffs' motion for summary judgment in 1986, the cause in No. 82—MR—210 had been appealed and reversed

and remanded. It is clear from this court's opinion in that case that the plaintiffs' property was included in the area annexed by Waukegan. *People ex rel. City of North Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d 88, 89-90.

North Chicago argues that not every attempt by another municipality to annex or incorporate property bars annexation. In support, it points to *City of Countryside v. Village of La Grange* (1962), 24 Ill. 2d 163, and *People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63. Plaintiffs also rely on *Countryside* in support of their position that it is improper for one municipality to annex territory while the proceeding for the annexation for the same territory is pending.

In *Countryside*, the city of Countryside initiated proceedings for annexation of an 80-acre tract by adopting an ordinance requesting annexation of the territory and filing it in the county court on February 23, 1961. The village of La Grange later filed objections to Countryside's annexation on the ground that a portion of the territory which Countryside sought to annex had already been annexed by La Grange. La Grange's annexation of this portion of the territory occurred on March 15, 1961, *after* Countryside's petition for annexation was on file. Based on *City of East St. Louis v. Touchette* (1958), 14 Ill. 2d 243, the court determined La Grange had no power or authority to effect an annexation of the same territory so long as Countryside's petition was on file and undefeated.

Objections to Countryside's petition for annexation were also filed in that case, however, by the owners of the 80-acre tract, who stated they had filed a petition on June 8, 1960, with the village of McCook asking that the village annex their property. The owners argued that since their petition to annex to McCook was still on file and undefeated, Countryside could not attempt to annex the same property.

Relying on *People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63, the court found that because McCook had taken no action on the owner's petition for annexation between the time of its filing, June 8, 1960, and Countryside's filing of its petition for annexation, February 23, 1961, its long delay and inaction deprived it of any priority which it might have acquired over the territory in question.

In the instant cause, Waukegan adopted its ordinance annexing plaintiffs' and others' property on June 4, 1982. North Chicago filed its complaint in *quo warranto* against Waukegan on July 30, 1982, alleging that roadway portions of the subject property were within the corporate limits of the city of North Chicago. Waukegan's answer thereto raised as an affirmative defense the allegedly improper annexation of certain roads by North Chicago. *People ex rel. City of North*

*Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d 88, 92.

On September 7, 1982, North Chicago purported to annex a portion of the territory already annexed by Waukegan (plaintiffs' property here, the triangular parcel). Thus, it is clear the validity of Waukegan's annexation of the plaintiffs' and others' property was pending in the separate *quo warranto* suit filed by North Chicago at the time North Chicago annexed the triangular parcel. Based on the rule announced in *City of Countryside v. Village of La Grange* (1962), 24 Ill. 2d 163, North Chicago had no power or authority to effect an annexation of the same territory already annexed by ordinance by Waukegan.

It is clear North Chicago purported to annex the triangular parcel in 1982 pursuant to section 7–1–13 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7–1–13). That section allows the annexation of *"unincorporated* territory containing 60 acres or less." At the time of its annexation, the triangular parcel was *not* "unincorporated," since Waukegan's ordinance annexing the plaintiffs' and others' property had not at that time been set aside.

North Chicago points out Waukegan's annexation was ultimately set aside, however, apparently due to insufficient notice. Although we acknowledge the rule that a prior annexation proceeding is not entitled to priority if the first-in-time annexation is jurisdictionally defective (see, *e.g., In re Organization of Byron Park District* (1978), 67 Ill. App. 3d 61, 64; *People ex rel. Saam v. Village of Green Oaks* (1965), 55 Ill. App. 2d 51, 56-58), it does not appear from the record that the court entered its judgment in the North Chicago *quo warranto* suit against Waukegan until *after* it decided the instant *quo warranto* suit, even though both judgments were entered the same day. The two causes were never consolidated, and the court's subsequent ruling on the validity of Waukegan's annexation cannot be viewed as a factor which the court could have taken into account in rendering its prior judgment concerning the validity of North Chicago's annexation of the same property. Thus, Waukegan's annexation was entitled to priority, and North Chicago had no power or authority on September 7, 1982, to effect an annexation of the same property.

■■ Because North Chicago's 1982 annexation was a nullity, the noncontiguity of the 1977 annexation of Pulaski Drive was not "cured" thereby, and it became subject to attack. Section 7–1–10 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7–1–10) provides in pertinent part:

> "Any municipality by ordinance may annex any territory contiguous to it even though the annexed territory is dedicated or

used for street or highway purposes under the jurisdiction of the Department of Transportation of the State of Illinois, or a county or township highway department if no part of the annexed territory is within any other municipality."

The definition of the term "contiguous" as applied to annexation of streets projecting beyond the limits of a municipality is well settled:

"The word 'contiguous,' *** must be defined in keeping with what was the obvious intention of the legislature, which was to make it permissible for a municipality to annex a roadway where, for example, a roadway separates a municipality from territory just the other side of the roadway which the municipality needs for existing municipal purposes and for natural growth, even though no part of the roadway already lies within the municipality. Contiguous *** must mean contiguous in the sense of *adjacent to and parallel to* the existing municipal limits ***." (Emphasis added.) *People ex rel. Adamowski v. Village of Streamwood* (1959), 15 Ill. 2d 595, 601.

"[A]nnexation of any roadway which is not adjacent and parallel to a municipality's boundaries *** is a forbidden 'strip or corridor' annexation." *People ex rel. Coojar Realty Corp. v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 203, 206.

■■■ North Chicago contends the issue of whether the property annexed in 1977 was a "roadway" is a genuine issue of material fact which precluded summary judgment. None of the parties' summary judgment pleadings were supported by affidavit. Plaintiffs' motion for summary judgment was supported (by reference to its amended complaint) by a certified copy of the 1977 annexation ordinance, which included a plat of annexation, a certified copy of the judgment order from the eminent domain proceeding in which Lake County obtained title to the property for the construction of a roadway, and a certified copy of the 1982 annexation ordinance accompanied by a plat of survey of the subject property. Municipal and court records thusly certified constitute proof of the matters therein. (Ill. Rev. Stat. 1985, ch. 110, pars. 8—1202, 8—1203.) These exhibits establish that the property annexed in 1977 was a roadway and that approximately three-quarters of its total length extended *perpendicularly* to the west and north away from the western boundary of the North Chicago city limits as those limits are shown on the 1977 plat of annexation appended to North Chicago's 1977 annexation ordinance.

North Chicago's allegation that the property was not dedicated for highway purposes until six months after it was annexed and its attempt to create a genuine issue of material fact by attaching to its

motion a copy of a "Plat of Survey of County Highway 78" are ineffectual. The plat is not certified in accordance with section 8—1205 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 8—1205), and it bears signatures of two persons, one signature dated November 8, *1976,* and one dated May 3, 1978. Moreover, North Chicago's allegation that the highway was not dedicated until six months after its annexation is directly contradicted by its own 1977 annexation ordinance which recites that the "hereinafter legally described property [which included Pulaski Drive] is dedicated for highway purposes."

It is clear the property annexed by North Chicago in 1977 was not "contiguous in the sense of adjacent to and parallel to the existing municipal limits" of North Chicago. Accordingly, we find no genuine issue of material fact existed as to whether North Chicago's 1977 annexation was a prohibited roadway strip annexation.

We note North Chicago's contention that the court's order granting summary judgment nullified in total both the 1977 and 1982 annexations. It asserts this was improper because the plaintiffs conceded the validity of that portion of the 1977 annexation which was located east of route 41 (essentially the area known as Fourteenth Street). Plaintiffs do not deny the validity of the Fourteenth Street portion of the annexation, and their amended complaint reflects this. However, both the amended complaint and the motion for summary judgment prayed that the court would enter an order declaring the respective 1977 and 1982 annexation ordinances "null and void." The pleadings and other documents on file on which the court based its decision to grant summary judgment clearly would not support a judgment which would invalidate the entire 1977 annexation, and section 7—1—48 of the Illinois Municipal Code specifically provides for a finding of partial invalidity of an annexation. (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—48.) Accordingly, we affirm the court's grant of summary judgment, but modify it to exclude the Fourteenth Street portion of the 1977 annexation, which plaintiffs concede was valid.

North Chicago's motion to dismiss the appeal as moot is denied, and the judgment of the circuit court of Lake County is affirmed, as modified.

Motion to dismiss appeal as moot denied; judgment affirmed as modified.

NASH and REINHARD, JJ., concur.